# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

PATRICK GUILLORY (#587254)                                CIVIL ACTION

VERSUS

MSGT. BOBBY EARL, ET AL.                                   NO. 13-0675-SDD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 4, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

PATRICK GUILLORY (#587254)                                    CIVIL ACTION

VERSUS

MSGT. BOBBY EARL, ET AL.                                      NO. 13-0675-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment (R. Docs. 55 and 57).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Msgt. Bobby Earl, Msgt. Angela Webb and Lt. Melvin McDowell, complaining that his constitutional rights were violated on October 17, 2012, when defendants Earl and Webb allegedly allowed a co-inmate out of his cell to attack the plaintiff and cause the plaintiff injury.  The plaintiff further complains that he was denied appropriate medical attention after the referenced attack by defendants Earl and McDowell.  Pursuant to an amendment to the Complaint (R. Doc. 10), the plaintiff has added a claim that defendant McDowell subsequently issued a wrongful disciplinary report against the plaintiff on April 3, 2013, in retaliation for the plaintiff having filed an administrative grievance against defendant McDowell.

The plaintiff moves for partial summary judgment – pertaining only to his claim of retaliation – relying upon the pleadings, a Statement of Undisputed Facts, a sworn Declaration signed "under penalty of perjury," copies of two disciplinary reports dated October 17, 2012, prepared by defendants Bobby Earl and Melvin McDowell, respectively (charging the plaintiff

with "General Prohibited Behavior"), copies of the plaintiff's Request for Administrative Remedy ("ARP") dated October 23, 2012, together with related documentation prepared in connection therewith, and copies of two disciplinary reports dated April 3, 2013, prepared by defendant Melvin McDowell and MSgt. Brian Nettles, respectively (charging the plaintiff with "Theft," "General Prohibited Behavior" and "Contraband").

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of an Investigation Report, with related documentation, dated June 30, 2013, prepared by Major Michael G. Vaughn, a copy of the TU/Extended Lock Down Shower and Yard Roster for the date October 17, 2012, a certified copy of Department Regulation No. C-02-003 (re: "Searches of Offenders"), a certified copy of a Backlog Report for the date October 17, 2012, certified copies of Population Movement Sheets for the date October 17, 2012, a copy of an Unusual Occurrence Report dated October 17, 2012, prepared by defendant Bobby Earl, a certified copy of the plaintiff's Enemy List dated April 10, 2012, a certified copy of the Enemy List of co-inmate Isiah Cooley dated October 18, 2012, a copy of a disciplinary report dated October 17, 2012, prepared by defendant Bobby Earl (charging the plaintiff with "General Prohibited Behaviors"), a certified copy of a disciplinary report dated April 3, 2013, prepared by defendant Melvin McDowell (charging the plaintiff with "Theft" and "General Prohibited Behavior"), certified copies of excerpts from the plaintiff's medical records, and the affidavits of Ass't Warden Orville Lamartiniere and defendants Bobby Earl, Angela Webb and Melvin McDowell.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that in early 2012, he requested protective custody at LSP after having learned of a purported plot to have him killed because he had been an informant for the Louisiana State Police.  As a result, a hearing was held on April

15, 2012, and the plaintiff's request was granted, and he was assigned to a protective custody cell at the TU/Extended Lockdown unit at LSP, which the plaintiff asserts "houses mentally ill offenders, protective custody offenders, and dangerously violent offenders." The plaintiff asserts that, at the referenced housing location, he was allowed out of his cell for one hour per day to shower and exercise. The plaintiff further alleges that on October 17, 2012, defendant Angela Webb was assigned to the control room at the plaintiff's housing unit, and she activated the mechanism to open the plaintiff's cell door for his exercise period. The plaintiff then exited his cell onto the tier hallway and, as he did so, he allegedly noticed defendant Webb and defendant Bobby Earl standing at the head of the tier watching him through the bars of the tier hallway. The plaintiff then turned to adjust the controls on the television on the tier hallway and, as he did so, he heard another cell door open, and he was immediately attacked by a co-inmate, Isiah Cooley, who stabbed the plaintiff twenty-one times. The plaintiff alleges that, a short while later, the defendants opened the co-inmate's cell door for the co-inmate to return to his cell, and then opened the plaintiff's cell door for him to also return. According to the plaintiff, defendant Bobby Earl then came down the tier and asked the plaintiff, who was allegedly covered in blood, if the plaintiff needed medical attention. Although the plaintiff asserts that he responded that he needed emergency medical attention, defendant Earl instead escorted the plaintiff to the office of defendant Melvin McDowell, who interrogated the plaintiff regarding the incident before allowing the plaintiff to visit the LSP infirmary.

Finally, the plaintiff alleges that he submitted an administrative grievance to prison officials regarding the foregoing events (hereafter referred to as the "attack grievance") and was approached on October 23, 2012, by defendant McDowell, who threatened the plaintiff with further harm and injury if the plaintiff pursued the referenced grievance. The plaintiff allegedly

refused to withdraw the attack grievance and, instead, submitted a second grievance, accusing defendant McDowell of wrongdoing in threatening the plaintiff with retaliation (hereafter referred to as the "retaliation grievance"). According to the plaintiff, defendant McDowell received notification of the second grievance on April 3, 2013, and in response thereto, on the same day, retaliated against the plaintiff by issuing the plaintiff a disciplinary report, charging the plaintiff with "Theft" and "General Prohibited Behavior," and accusing the plaintiff of making "frivolus [sic], deliberate malicious and false allegations" against defendant McDowell in the grievance. According to the plaintiff, defendant McDowell also induced another security officer, Brian Nettles (not named as a defendant herein), to issue the plaintiff a disciplinary report on that date, accusing the plaintiff of possessing contraband. As a result of the two disciplinary reports, the plaintiff was sentenced to eight (8) weeks loss of canteen privileges, eight (8) weeks loss of phone privileges, eight (8) weeks loss of yard privileges, and a housing change to punitive segregated confinement at Camp J at LSP, where he allegedly remained for a period of eight (8) months.[1]

Turning first to the events of October 17, 2013, and addressing the defendants' contention that they are entitled to qualified immunity in connection with the plaintiff's claims relative to that date, the Court finds (1) that there are genuine material facts in dispute that preclude summary judgment in connection with the plaintiff's failure-to-protect claim, but (2) that the defendants are entitled to qualified immunity in connection with the plaintiff's claim of deliberate medical indifference on that date.

---

1. The plaintiff has clarified in his pleadings that he has named the defendants solely in their individual capacities. *See* R. Doc. 63 at p. 2. Accordingly, the Court need not address the defendants's contentions regarding the viability of the plaintiff's claims asserted against them in their official capacities.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Undertaking the qualified immunity analysis first with respect to the plaintiff's failure-to-protect claim, the Court finds that there are disputed questions of material fact that preclude summary judgment in connection with this claim. In this regard, an inmate has a constitutional

---

2. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

right under the Eighth Amendment to be sheltered from a pervasive threat of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order for there to be liability in connection with this cause of action, however, there must have existed an intent on the part of the defendants to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. *Johnston v. Lucas, supra*, 786 F.2d at 1259. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Applying the foregoing standard, whereas defendants Webb and Earl attest that they neither participated in nor witnessed any part of the fight between the plaintiff and the offending co-inmate, the plaintiff asserts that he observed both defendants watching him from the head of the tier hallway shortly before the attack occurred and that, once the attack started, neither defendant took action to stop the attack until after the plaintiff had been stabbed multiple times by the co-inmate. Although defendant Earl asserts that he was not present on the tier at the time of the fight and was instead assisting with the shakedown and transport of other inmates in a different area, the evidence suggests that defendant Earl in fact conducted rounds on the plaintiff's tier both immediately before the plaintiff's one-hour tier time and immediately

thereafter. Specifically, defendant Webb attests in her affidavit that the offending co-inmate, Isiah Cooley, had his one-hour tier time immediately before the plaintiff's and that, after inmate Cooley's period was over, she signaled the inmate to return to his cell – by blinking the lights on the tier – so that defendant Earl could conduct rounds on the tier. *See* R. Doc. 57-3 at pp. 68-70. Defendant Webb further attests that after defendant Earl finished conducting rounds on the tier, defendant Earl instructed her to allow the plaintiff out of his cell to begin his respective tier time. *Id.* According to defendant Webb, at the conclusion of the plaintiff's period, an hour later, defendant Earl was again (or still, the Court notes) present on the tier because she attests that she signaled for the plaintiff to return to his cell so that defendant Earl could again conduct rounds on the tier. In the Court's view, the presence of defendant Earl on the plaintiff's tier both immediately before and immediately after this one-hour period, during which the fight occurred, while not determinative of any wrong-doing, calls into some question the defendants' assertion that defendant Earl had left the tier to assist in shaking down other inmates at a different location. In addition to the foregoing, the Court finds that a substantial part of the evidence offered by the defendants in support of their motion for summary judgment is not properly before the Court. Specifically, the defendants rely heavily upon an unsworn Investigation Report that is based principally upon interviews with security officers and inmates and which concluded that the fight occurred because the offending co-inmate unilaterally took action to jam his cell door open with a piece of toothbrush and did so in such a way as to circumvent the electronic panel in the control room that was designed to signal the status of the cell doors. The Investigation Report, however, was prepared by a corrections official who did not himself submit an affidavit to support the assertions contained therein. Further, the Investigation Report is itself based largely upon hearsay statements allegedly provided by co-inmates and so is not based

upon personal knowledge on the part of the Report's author. Whereas the Investigation Report is corroborated somewhat by the affidavit of Ass't Warden Orville Lamartiniere, R. Doc. 57-3 at pp. 36-37, who attests that he spoke with the offending co-inmate after the incident and was able himself, after several attempts, to jam the cell door as described by the inmate, this does not, in the Court's view, resolve the factual issues in this case.

In addition to the foregoing, the Court finds alarming the existence of admitted security deficiencies on the plaintiff's cell tier by reason of the condition of the cell doors and the control panel within the plaintiff's housing unit. In this regard, the defendants concede that the plaintiff is a known informant at LSP, having previously assisted the Louisiana State Police, and that he was placed in protective custody for this reason. It is also indisputable that being a known informant at LSP, or at any correctional facility, has the effect of placing the identified inmate in great danger, both at the hands of co-inmates and potentially at the hands of correctional officers as well. The plaintiff in fact asserts that he was aware of a plot at the prison to have him killed. Notwithstanding, the plaintiff was assigned to a cell tier which, by all accounts, was not secure. Specifically, the above-referenced Investigation Report notes that Cell # 6 on the tier hallway, *i.e.,* the cell housing the offending co-inmate in this case, was known to "open[] by itself manually occasionally." *See* R. Doc. 57-3 at p. 2. Further, as discussed hereafter, there were numerous additional problems with the cell doors and the control panel on the plaintiff's tier. Specifically, defendant Webb prepared and submitted a written statement regarding the events of October 17, 2012, and this statement provides:

> I often have problem with these control panel ... concerning the cell door and tier door. Also the tier door lights stay on constantly on some cell door. The door do not close or open all the time without Officers assistant or offender assistant. *The cell doors lights stays on some time when the door are close and some time when the cell door are open the lights stay off.* TU has been having problems with the control panel numerous of time and maintenance has been called on several occasion about the default with these panels

....

*See id.* at p. 24 (Statement of Angela Webb dated October 17, 2012) (Emphasis added).  This statement calls into question the objective reasonableness of defendant Webb's reliance on the control panel light signals on the date of the incident and her assertion, in her affidavit, that before the attack, she "inspected the control room panel and verified that all cell doors were closed and no other cell door was open at the time [she] released inmate Guillory."  *See id.* at p. 69.  This statement also calls into question the assertion in her affidavit that during her "many years" of being stationed in the TU control room, "this is the only time an inmate has been able to open his cell door on his own."  *See id.* at p. 69.  Finally, a hand-written statement written by defendant McDowell after the incident provides an even more damning assessment of the condition of the cell doors on the plaintiff's tier.  *See id* at p. 23.  This statement provides:

> TU/Ext. has had numerous problems with cell doors as well as tier doors not closing properly without officers or inmate assistance.  Their [sic] are several lights that stay on at all times on some of the panels and some that won't come on at all when the cell is open.  [There] are times when cell doors won't open electrically and has to be manually open by officer using the key.  Maintenance has to come to TU/Ext. at least two times a week and some times two and three times a day, working on these panels, tier doors and cell doors as well.  Maintenance is notified of each incident and come to TU/Ext. to work on the problems, sometimes successful and sometimes not.  Sometimes [there] are parts that have to be ordered.

*See id.* (Statement of Melvin McDowell, dated October 17, 2012).

Notwithstanding the foregoing, the plaintiff was assigned to a cell on the referenced tier and, even accepting defendant Webb's affidavit as true – that she did not participate in causing the attack of October 17, 2012 – she concedes that, with knowledge of the generalized danger faced by the plaintiff because of his status as an informant and with knowledge of the noted lack of security on the tier, she did not remain in a part of the control room that allowed her to see down the tier hallway during the plaintiff's exercise period on the date of the incident.  Thus, even if the defendants were not aware of the specific danger faced by the plaintiff from the

offending co-inmate housed on the tier, and event discounting the plaintiff's assertions that

defendants Webb and Earl had actual participation in, and awareness of the event, the above

facts raise questions regarding the obviousness of the risk faced by the plaintiff and whether the

defendants' actions in this case approach the sort of "subjective recklessness" or conscious or

callous disregard for the plaintiff's safety that supports a finding of deliberate indifference to his

right to be protected from harm.  As stated in *Farmer v. Brennan, supra*:

> [w]hether a prison official had the requisite knowledge of a substantial risk is a question
> of fact subject to demonstration in the usual ways, including inference from
> circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a
> substantial risk from the very fact that the risk was obvious.

511 U.S. at 842.  *See also Smith v. Breoettsy*, 158 F.3d 908, 913 (5th Cir. 1998) (noting that once

the plaintiff is able to point to facts in the record suggesting an inference that the defendant had

the requisite knowledge of a substantial risk of serious harm, the determination whether the

defendant actually drew the inference "becomes a factual question").  Accordingly, based on the

evidence in the record suggesting that the defendants may have failed to take objectively

reasonable action in response to a substantial risk of serious injury to the plaintiff of which they

were aware, the Court concludes that summary judgment is not appropriate in connection with

this claim.  *See Cantu v. Jones,* 293 F.3d 839, 844-45 (5th Cir. 2002) (upholding a finding of

liability against security officers who the plaintiff accused of orchestrating an attack against him

by allowing another inmate to escape his cell); *Campbell v. Miles*, 228 F.3d 409 (5th Cir. 2000)

(upholding an award of compensatory and punitive damages in a failure-to-protect case, upon a

finding that the defendant had failed to act in an objectively reasonable manner in response to

known threats made against the inmate plaintiff).

In contrast to the foregoing, the Court concludes that there is an insufficient basis for

concluding that any defendant was deliberately indifferent to the plaintiff's serious medical

needs after the attack on October 17, 2012. The plaintiff complains in this regard that after the referenced attack, defendant Earl came down the tier and asked the plaintiff whether the plaintiff needed medical care. The plaintiff asserts that he responded with a request for emergency attention but, instead of summoning medical personnel or transporting the plaintiff to the infirmary, defendant Earl escorted the plaintiff to the office of defendant McDowell's, where defendant McDowell allegedly questioned the defendant about the incident instead of calling for medical attention.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must be able to show that appropriate medical care has been denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, as noted above, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment, *Farmer v. Brennan*, *supra*, 511 U.S. at 839-30, and as stated in *Farmer*, to be liable on a claim of deliberate medical indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prevail on this claim, the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756

(5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court concludes that the plaintiff has failed to present evidence supporting a claim of deliberate medical indifference on the part of the defendants named herein. To the contrary, the evidence suggests that the attack by the co-inmate occurred between 2:00 and 3:00 p.m. on the afternoon of October 17, 2012, and that defendant Earl came down the plaintiff's tier shortly after the fight took place. Specifically, the plaintiff acknowledges that the attack took place during the second half of his one-hour tier time, and since the prison records reflect that the plaintiff's tier time was scheduled between 1:30 and 2:30 p.m. on that date, this leads to a conclusion that the incident happened after 2:00 p.m. *See* R. Doc. 57-3 at p. 38. In addition, the reports generated by prison officials shortly after the incident consistently reflect that the plaintiff was found to have been involved in the altercation at around 3:00 p.m. on that date, hence the stated range. Notwithstanding, whereas the plaintiff complains that he was made to wait and undergo an interrogation by defendant McDowell while allegedly covered in blood and requesting emergency medical attention, there is no evidence in the record that suggests that the plaintiff's access to medical care was delayed to any great extent. Specifically, defendant McDowell attests in his affidavit that his questioning of the plaintiff took no more than five (5) minutes and that the plaintiff was then provided with access to medical care. See R. Doc. 57-3 at pp 65-66. This assertion is further corroborated by the medical records themselves, which reflect that the plaintiff was evaluated and treated by medical personnel at the LSP infirmary at or around 3:00 p.m. on that date. *See* R. Doc. 57-3 at p. 138. Finally, the medical records reflect that the plaintiff's objective injuries were not such as to constitute a

serious medical need that was ignored by any defendant.  Although the plaintiff alleges that he was "stabbed twenty one times" by the offending co-inmate, an examination of his person after the incident revealed only superficial lacerations, abrasions and puncture wounds.  *See id.* at pp. 137-39.  The only treatment required was apparently the cleaning of his wounds, and the plaintiff was released to return to his assigned housing unit after medication was prescribed and x-rays were taken.  *See id.*  Within two weeks of the altercation, all of the wounds had healed as noted in medical reports generated on October 29 and November 1, 2013.  *See id.* at pp. 135-36.  In short, although there was apparently a very brief delay that occurred after the incident, during which the plaintiff was questioned by defendants Earl and  McDowell, the injuries received by the plaintiff were not life-threatening, and the plaintiff was evaluated by medical personnel almost immediately thereafter.  Thus, it does not appear that the plaintiff will be able to show in this case that any defendant was deliberately indifferent to his serious medical needs, and the plaintiff's claim in this regard is subject to dismissal.

Finally, the Court turns its attention to the plaintiff's claim that defendant McDowell subjected the plaintiff to retaliation after the incident of October 17, 2012.  The Court notes that both the plaintiff and the defendants seek summary judgment in connection with this claim.  In this regard, the law is clear that the taking of action against an inmate in retaliation for the inmate's exercise of his First Amendment constitutional right to seek redress of grievances may amount to a violation of the inmate's constitutional rights.  *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.  *Id.* at 1166.  Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional

right, (2) that the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). To demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166. Further, the purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v. Powell, supra*, 449 F.3d at 686. Accordingly, retaliatory conduct toward an inmate is actionable only if it is capable of deterring a person of ordinary firmness from the further exercise of his constitutional rights. *Id.* Thus, *de minimis* actions that would not deter an ordinary person from the further exercise of his rights do not rise to the level of a constitutional violation. Finally, an inmate does not have the right to file frivolous administrative claims, and a frivolous or baseless grievance cannot support a retaliation claim under § 1983. *See Lewis v. Guillot*, 583 Fed. Appx. 332, 333 (5th Cir. 2014), *citing Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). *See also Brown v. Craven*, 106 Fed. Appx. 257, 258 (5th Cir. 2004).

Applying the foregoing standard, the Court finds that the plaintiff has stated a viable claim of retaliation against defendant McDowell but that there remain disputed issues of fact that preclude the grant of summary judgment in the plaintiff's favor. In this regard, the plaintiff's allegations and evidentiary showing reflect that he submitted an initial administrative grievance to prison officials regarding the events of October 17, 2012. The plaintiff further attests that six

days later, on October 23, 2012, defendant McDowell came to the plaintiff's cell and threatened the plaintiff with harm and injury if the plaintiff did not withdraw the referenced grievance. According to the plaintiff, he refused to withdraw the referenced grievance and instead filed a second grievance, the retaliation grievance, accusing defendant McDowell of having made threats in retaliation for the initial grievance. Because of a backlog in the handling of administrative claims, the plaintiff's second retaliation grievance was not immediately processed. On April 13, 2013, however, defendant McDowell apparently received a copy of the retaliation grievance and, in direct response thereto, issued the plaintiff a disciplinary report on the same date, accusing the plaintiff of making false and malicious assertions in the grievance and charging the plaintiff with violating Rules 22 and 30R of the prisoner rulebook, pertaining to "theft" and to "abusing the administrative remedy procedure." The plaintiff was ultimately found guilty of these charges and was sentenced to a loss of eight weeks of canteen privileges and a loss of eight weeks of phone privileges.[3]

In responding to the plaintiff's allegations, the defendants admit that defendant McDowell issued the plaintiff a disciplinary report on April 13, 2013, charging the plaintiff with theft and with abusing the administrative remedy procedure. The substance of the referenced disciplinary report is as follows:

> On the above date and approximate time, I Lt. Melvin McDowell recieved [sic] a ARP written by the above offender that completely contained frivolus [sic], deliberate

---

3. The plaintiff also complains of a disciplinary report for "Contraband" issued on the same date by Officer Brian Nettles, which report resulted in the plaintiff being sentenced to punitive segregated confinement at Camp J at LSP. Officer Nettles is not a party to this proceeding, however, and whereas the plaintiff seeks to attribute the Contraband report to defendant McDowell, by asserting that defendant McDowell induced Officer Nettles to plant contraband in the plaintiff's cell, the Court need not address this contention because the Court concludes, as discussed hereafter, that the disciplinary report issued by defendant McDowell is sufficient to support the plaintiff's retaliation claim.

> malicious and false allegations. Offender Guillory was placed in TU/Ext. administrative
> segregation for violating Rule # 22 Theft and # 30R Abuse of the Administrative Remedy
> Procedure.

R. Doc. 57-3 at p. 151. Thus, it appears that defendant McDowell essentially admits to three of

the four elements of a viable claim of retaliation, *i.e.,* that the plaintiff was attempting to exercise

his First Amendment constitutional right to seek redress of grievances (by submitting an

administrative claim), that defendant McDowell took an adverse action against the plaintiff in

direct response to the plaintiff's administrative claim, and that there was a direct causal

relationship between the two actions, *i.e.,* that but for the plaintiff's administrative grievance, the

disciplinary report would not have been issued against him. *See Guillot v. Day*, 139 F.3d 900, *2

(5th Cir. 1998) (upholding the denial of summary judgment in favor of a prison official who

issued a disciplinary report against an inmate for "abusing the ARP procedure" by filing too

many administrative claims). The defendant contends, however, that the fourth essential element

of a viable retaliation claim is not present in this case, specifically the requirement that the

adverse retaliatory act be greater than *de minimis*. Relying upon this assertion alone, the

defendant contends that the plaintiff's disciplinary sentence resulting from the referenced

disciplinary report, the loss of eight weeks of phone and canteen privileges, is purely *de minimis*

and, as a result, the plaintiff's retaliation claim fails as a matter of law.

     The Court rejects the defendant's assertion in this regard. Although there is no bright-

line rule for determining when an adverse action taken by a prison official amounts to a greater

than *de minimis* action, the Court easily finds that the referenced disciplinary sentence meets this

test in this case. Courts that have addressed this issue have routinely concluded that restriction

upon commissary privileges for a period of a month or more are greater than a *de minimis*

adverse retaliatory act. *See Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (disciplinary

sentence of 27 days of commissary and cell restriction); *Andrade v. Hauck*, 452 F.2d 1071, 1072 (5ᵗʰ Cir. 1971) (restriction of commissary privileges for an unstated period of time); *Lamb v. Crites*, 2011 WL 1668063, *2 (S.D. Tex. April 29, 2011) (restriction of commissary privileges for a period determined to be between three weeks and two months). *Cf., Johnson v. Kelly*, 2007 WL 1849001, 11 (S.D. Tex. June 25, 2007) (finding a 10-day commissary restriction to be *de minimis*). Whereas the defendant seeks to draw a distinction between these cases and the present claim by asserting that the 8-week canteen and phone restriction imposed in the instant case effectively amounted to only an 8-day canteen restriction and a 2-day phone restriction – because the plaintiff's housing classification allowed him access to the prison canteen only once per week and allowed him a personal phone only once per month – this contention is not persuasive and is not supported by the rationale of the referenced cases. Accordingly, the Court finds that the disciplinary sentence imposed as a result of defendant McDowell's disciplinary charge of April 3, 2013, is sufficient to support the plaintiff's retaliation claim in the instant case.

If this were the end of the Court's inquiry regarding the plaintiff's retaliation claim, the Court would be inclined to grant the plaintiff's motion for summary judgment in connection therewith. However, an additional issue has come to the Court's attention, not addressed by either party, that the Court finds precludes summary judgment in connection with this claim. Specifically, as discussed hereafter, if in fact the plaintiff's retaliation grievance consisted of deliberately false and malicious allegations against defendant McDowell, as the defendant asserted in the disciplinary report of April 3, 2013, than the plaintiff's grievance arguably may not form the basis for a valid claim of retaliation before this Court.

Although the law is well-settled that prison officials are not allowed to retaliate against or harass an inmate because of the inmate's exercise of his right to seek redress of grievances, *i.e.*,

because the inmate has complained to supervisors about the alleged wrongful conduct of prison security officers, this right is not unlimited and extends only to the making of non-frivolous complaints involving the assertion of legitimate constitutional rights. As stated in *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997):

> This right of access for prisoners is not unlimited, however; rather, it encompasses only "a reasonably adequate opportunity to file *nonfrivolous* legal claims .... Thus, neither any frivolous filings nor any secondary litigation activity ... that does not involve preparation of lawsuits challenging ... the conditions of his or her confinement, may comprise the basis of a retaliation claim.

*Id.* at 310-11 (emphasis added). The plaintiff bears the burden of showing that his grievance activities have involved the assertion of constitutionally cognizable claims. *Id.* at 311 n. 16.

In the instant case, as outlined above, the plaintiff made factual assertions in the retaliation grievance he filed against defendant McDowell on October 23, 2012, that the defendant came to the plaintiff's cell on that date, six days after the attack by the offending co-inmate on October 17, 2012, and threatened the plaintiff with harm and injury if the plaintiff pursued his earlier grievance relative to the attack. Notwithstanding, it appears from the copy of the earlier attack grievance contained in the record, R. Doc. 55-4 at p. 4, that that grievance was not stamped as received in the LSP Warden's Office until October 25, 2012, and was not stamped as received in the LSP Legal Programs Department until October 29, 2012. *See id.* Thus, it appears highly questionable whether defendant McDowell could have known about the existence of the initial attack grievance on October 23, 2012, the date upon which he allegedly threatened the plaintiff, before the attack grievance was even received or processed by LSP personnel. As such, the assertions in the plaintiff's subsequent retaliation grievance, wherein he accused defendant McDowell of having made threats on October 23, 2012, may in fact have been, as stated by defendant McDowell in the ensuing disciplinary report, false, frivolous and

malicious so as to support the resulting disciplinary charge. For this reason, the Court concludes that there remain factual questions in this case that are not susceptible of resolution on motion for summary judgment, *i.e.,* whether defendant McDowell in fact visited the plaintiff's cell on October 23, 2012, as the plaintiff alleges. Specifically, if defendant McDowell did not do so, then the plaintiff's retaliation grievance submitted against defendant McDowell on that date was in fact false and malicious as asserted by defendant McDowell and was not protected activity by the plaintiff sufficient to support a viable claim of retaliation. *See Simoneaux v. Epps*, 2015 WL 1197543, *5 (S.D. Miss. March 13, 2015) (finding that the plaintiff's retaliation claim was deficient where the basis therefor was his filing of an administrative grievance containing false statements that the court found "was not protected activity"). *See also Barlow v. Dominguez*, 198 F.3d 244, *2 (6th Cir. 1999) (affirming the dismissal of an inmate's retaliation claim that was based on a disciplinary report that was issued for filing a false grievance). Accordingly, the Court concludes that summary judgment is not appropriate in connection with this claim, and that the claim should be allowed to proceed to trial.[4]

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over

---

4. The Court notes that any recovery to which the plaintiff may be entitled in connection with his retaliation claim asserted against defendant McDowell will be limited to nominal or punitive damages because the plaintiff has not alleged that he sustained any physical injury as a result of defendant McDowell's conduct and because a showing of physical injury is a prerequisite to the recover of compensatory damages for mental or emotional injury under 42 U.S.C. § 1997e(e).

which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, consider the status of this proceeding and the nature of the claims remaining before the Court, the Court further recommends that the exercise of supplemental jurisdiction be declined.

<u>RECOMMENDATION</u>

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, that the plaintiff's Motion for Partial Summary Judgment (R. Doc. 55) be denied, and that the defendants' Motion for Summary Judgment (R. Doc. 57) be granted in part, dismissing the plaintiff's claim of deliberate medical indifference asserted against defendants Bobby Earl and Melvin McDowell, with prejudice. It is further recommended that this matter be referred back for further proceedings in connection with the plaintiff's claim, asserted against the defendants in their individuals capacities under 42 U.S.C. § 1983, that defendants Bobby Earl and Angela Webb failed to protect him from harm at the hands of a co-inmate on October 17, 2012, and that defendant Melvin McDowell retaliated against the plaintiff on April 13, 2013, in response to the plaintiff's exercise of his First Amendment right to seek redress of grievances.

Signed in Baton Rouge, Louisiana, on September 4, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**